UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION

| | | |
|---|---|---|
| PAUL LAMBERT, MARY HOLDER, BARBARA HOLDER, PAMELA PURDIMAN, SHAMEKA NELSON, KIMBERLY SIMELTON, and CHENA BRAZIL, on behalf of themselves and all others similarly situated, | ) ) ) ) ) ) ) | Case No. 3:16-cv-513 |
| Plaintiffs, | ) ) | |
| | ) | Judge Michael Reagan |
| v. | ) ) | |
| ALEXANDER COUNTY HOUSING AUTHORITY, JAMES WILSON, THOMAS UPCHURCH, JOANNE PINK, and MARTHA FRANKLIN, an Illinois municipal corporation, | ) ) ) ) ) ) ) | Magistrate Judge Philip M. Frazier |
| Defendants. | ) | |

## AMENDED CLASS ACTION COMPLAINT

### INTRODUCTION

1. This lawsuit is brought on behalf of current and former residents of the Alexander County Housing Authority ("ACHA") to remedy rampant race discrimination and family status discrimination. For years, ACHA and its agents have discriminated against residents of its McBride and Elmwood family housing developments based on their race and familial status, in violation of the Fair Housing Act, 42 U.S.C. § 3604, Title VI of the Civil Rights Act of 1964, and the Illinois Civil Rights Act of 2003.

2. ACHA has engaged in a pattern and practice of segregating its public housing developments by race, even though the United States Department of Justice previously found that it engaged in the same conduct more than 40 years ago.

3. ACHA also has engaged in a pattern and practice of not maintaining the Elmwood and McBride developments – which are occupied almost exclusively by African-American tenants – so that they have deteriorated to the point that they are nearly uninhabitable. McBride and Elmwood apartments, which are located in Cairo, Illinois, are infested with mice, roaches, and bedbugs. For years, Elmwood and McBride residents made request for repairs, and ACHA ignored them or repaired them in a substandard manner. Both developments also have long suffered from serious security problems. Despite these safety issues, ACHA failed to provide security guards or cameras.

4. Meanwhile, ACHA has adequately maintained its Connell Smith development in satisfactory condition and provided both security cameras and security guards. Until very recently, approximately half of Connell Smith residents were white, and almost all were over the age of fifty.

5. ACHA has refused to place families with children in certain public housing developments, such as Connell Smith, in order to prevent African American families from living in majority white public housing developments.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. §§ 1331 (federal question), 1343 (color of state law), 3613 (Fair Housing Act), and 1367 (supplemental jurisdiction).

7. Plaintiffs seek declaratory and injunctive relief against the ACHA, pursuant to 28 U.S.C. §§ 2201 and 2202.

8. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because ACHA violated federal law in this judicial district.

## PARTIES

9. Paul Lambert is a 65-year-old African-American man who has lived in ACHA's Elmwood development since approximately 1978. He lives in a three-bedroom unit with his wife, Bessie, and 21-year-old disabled son, Sharonne.

10. Mary Holder is a 68-year-old African-American woman who has lived in ACHA's McBride development since approximately 1992. She lives alone in a two-bedroom unit.

11. Barbara Holder is a 70-year-old African-American woman who has lived in ACHA's McBride development since approximately 1970. She lives alone in a three-bedroom unit.

12. Pamela Purdiman is a 41-year-old African-American woman who has lived in ACHA's Elmwood development since approximately September 2015. Before that, she lived in ACHA's McBride Development between April 2001 and August of 2012 or 2013. She lives alone in a two-bedroom unit. When she lived in McBride, she lived with her minor children.

13. Kimberly Simelton is a 41-year-old Caucasian woman who has lived in ACHA's Elmwood development on and off since approximately 1994. She has been in her current unit since approximately 2008. She lives in a three-bedroom unit with her husband, Kenneth Simelton, and her 19-year-old daughter. Her daughter has always lived with her in her ACHA unit.

14. Shameka Nelson is an African-American woman who lives with her seven children, ages one to twelve, in a six-bedroom unit in ACHA's McBride development.

15. Chena Brazil is an African-American woman who lives with her three children, ages five, eleven, and twelve in ACHA's McBride development. She has lived at McBride for approximately twelve years.

16. Defendant Alexander County Housing Authority is an Illinois municipal corporation, created and existing under the Illinois Housing Authorities Act, 310 Ill. Comp. Stat. 10/1 *et seq.* ACHA is a public housing agency within the meaning of 42 U.S.C. § 1437. ACHA is a recipient of federal financial assistance and is considered to be a program or activity with operations subject to Title VI. 24 C.F.R. § 1.2(f). ACHA operates 478 public housing units within Alexander County.

17. Defendant James Wilson was ACHA's Executive Director from 1989 to 2013. He continued working for ACHA on a part-time consultant basis from 2013 to 2015. He returned to the Executive Director position for an 11-day period in early 2015.

18. Defendant Martha Franklin worked as ACHA's Executive Director from April 2013 to January 2015. She has worked as ACHA's Finance Director from 2015 to the present.

19. Defendant Thomas Upchurch worked as ACHA's Executive Director from approximately March 2015 to October 2015.

20. Defendant Joanne Pink worked as ACHA's Executive Director from October 2015 to January 2016.

21. In February 2016, the U.S. Department of Housing and Urban Development ("HUD") took over the operations of ACHA pursuant to 24 C.F.R. § 907.

## FACTUAL ALLEGATIONS
## HISTORY OF RACE DISCRIMINATON AT ACHA

22. ACHA has had a long history of discriminating against African-American residents based on their race.

23. In 1974, the U.S. Department of Justice filed a lawsuit against ACHA for intentionally segregating its two main public housing complexes by race. At the time, Elmwood was reserved for white residents, and Pyramid Courts (now McBride) was reserved for African-American residents.

24. The lawsuit was eventually settled, and ACHA agreed to stop segregating its housing based on race. ACHA agreed to prioritize occupancy such that Pyramid Courts would have 71 white residents (out of 237), and Elmwood would have 39 black tenants (out of 159).

### Defendants Have Segregated Residents on the Basis of Race And Perpetuated Racial Segregation

25. Today, ACHA has returned to its discriminatory past by engaging in a pattern and practice of segregating residents on the basis of race. Approximately 97% of the residents living in McBride and Elmwood are African-American, while white households predominate in the developments of Meadows, Johnson, Sunset Terrace, King, and Connell Smith. This is true even though African-Americans make up just 36% of the residents within Alexander County, ACHA's service area.

### Defendants Fail to Maintain McBride and Elmwood, Forcing The Residents To Live In Squalor

26. ACHA, through its Executive Directors, have engaged in a pattern and practice of allowing the McBride and Elmwood developments to deteriorate, while preserving and maintaining the Connell Smith development in satisfactory condition. Defendants have engaged in a pattern and practice of allowing the housing conditions at McBride and Elmwood to deteriorate because of the residents' race, African-American.

27. For several years, units located at McBride and Elmwood – including those occupied by Plaintiffs – have been infested with roaches, mice, and bedbugs. Despite residents' complaints, ACHA has done little to nothing to address the problem.

28. Many of the units at McBride and Elmwood have mold as well as plumbing and electrical deficiencies. Defendants have been aware of these problems for years, yet they have failed to meaningfully address them.

29. There is significant gun violence and other crime at McBride and Elmwood, yet ACHA has done very little to increase security at these developments. At the same time, ACHA has devoted security resources to Connell Smith and Shoemaker, where there is far less crime and no gun violence.

30. While ACHA was under the control of Defendants Wilson and Franklin, ACHA wasted resources on excessive employee retirement bonuses, unnecessary post retirement contracts, and unjustified travel expenses. These unjustified expenses are chronicled in an August 23, 2015 article entitled, "Chaos in Cairo" published by the newspaper, *The Southern Illinoisan*.

31. In part because of these unjustified payouts to current and former employees, ACHA has been unable to address the serious pest and rodent infestations or other conditions problems at McBride and Elmwood.

32. Wilson, Upchurch, Pink, and Franklin all worked as ACHA Executive Director during relevant time periods. None of them took action to meaningfully alleviate the pest and rodent problems at McBride and Elmwood, nor did they take action to meaningfully alleviate the crime, mold, and plumbing problems.

**HUD Finds That ACHA Discriminated Against Residents Based On Race**

33. On September 30, 2014, HUD issued a letter to ACHA finding that it had violated Title VI of the Civil Rights Act ("Title VI"), 42 U.S.C. § 2000d. *See* Exhibit A (HUD letter to ACHA). HUD determined that ACHA violated Title VI by engaging in intentional racial segregation in McBride and Elmwood. *Id*.

34. HUD also found that ACHA was well aware of the security and conditions issues at McBride and Elmwood, but failed to provide adequate maintenance and security resources to either development.

35. HUD concluded that ACHA's segregation of the developments by race and its corresponding failure to maintain McBride and Elmwood resulted in an adverse impact on African-American families and residents.

36. Despite these findings, ACHA, Wilson, Franklin, Upchurch, and Pink continued their pattern and practice of segregating families based on race and familial status and continued to allow the conditions at McBride and Elmwood to deteriorate because of the residents' race.

**ACHA's Enforces A Rule That Discriminates Against Families With Children**

37. All of ACHA's 478 units are designated as family public housing.

38. However, for at least the past ten years, ACHA, through its Executive Directors, have implemented a rule prohibiting families with children from living in Connell Smith, Shoemaker, and several of the scattered site developments and improperly reserved them for seniors and people with disabilities.

39. Neither Connell Smith nor Shoemaker nor the scattered-site programs satisfy the Fair Housing Act's definition of "housing for older persons" as defined at 42 U.S.C. § 3607(b)(2).

40. ACHA never sought to re-designate Connell Smith, Shoemaker, or the scatted site programs under PIH Notice 2005-2 prior to implementing this rule barring families with minor children and designating certain buildings as senior/disabled housing.

41. Wilson, Upchurch, Pink, and Franklin worked as ACHA Executive Director during relevant time periods. They all enforced the rule prohibiting families with children from living in Connell Smith, Shoemaker and the scattered site developments

### ACHA Breaches Its Residential Lease

42. On information and belief, during each year that they lived in a ACHA unit, Plaintiffs signed a lease with ACHA that provided as follows:

> PHA Obligations [966.4(e):   The PHA shall be obligated:
>
> a) To maintain the dwelling unit and the project in decent, safe, and sanitary condition.
>
> b) To comply with the requirement of applicable building codes, housing codes, and HUD regulations materially affecting health and safety;
>
> c) To make necessary repairs to the dwelling unit.

*See* Exhibit B (Copy of Sample Residential Lease Agreement).

43. ACHA breached its leases with Plaintiffs by allowing their units to become infested with mice, roaches, bedbugs, and mold and by allowing Plaintiffs' plumbing to deteriorate.

44. ACHA's breach caused Plaintiffs to suffer substantial monetary injury.

45. Plaintiffs substantially performed their obligations under their residential leases with ACHA.

46. In failing to maintain Plaintiffs' units in a decent, safe, and sanitary condition, Defendants demonstrated a conscious disregard for Plaintiffs' welfare.

## CLASS ACTION ALLEGATIONS

47. Plaintiffs Lambert, Mary Holder, Barbara Holder, Brazil, Purdiman, and Nelson bring the claims described in Counts I - VI on behalf of themselves and all others similarly situated pursuant to Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure.

48. Plaintiffs Lambert, Mary Holder, Barbara Holder, Brazil, Purdiman, and Nelson bring their claims described in Counts I - VI on behalf of a proposed "**McBride Elmwood Race Discrimination Subclass**" defined as, "All current and former African-American ACHA public housing residents who lived in McBride or Elmwood in the two years prior to the filing of Plaintiffs' original complaint."

49. Plaintiffs Simelton, Brazil, and Nelson bring the claims described in Counts VII and VIII on behalf of themselves and all others similarly situated pursuant to Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure.

50. Simelton, Brazil, and Nelson bring the claims described in Counts VII and VIII on behalf of a proposed **"McBride Elmwood Familial Status Discrimination Subclass"** defined as, "All current and former ACHA public housing residents who lived in McBride or Elmwood with minor children in the two years prior to the filing of Plaintiffs' original complaint."

51. All Plaintiffs bring the claim described in Count IX on behalf of themselves and all others similarly situated pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.

52. Plaintiffs bring the claim described in Count IX on behalf of a proposed **"McBride Elmwood Residential Lease Subclass"** defined as, "All current and former ACHA public housing residents who lived in McBride or Elmwood in the two years prior to the filing of Plaintiffs' original complaint."

53. All Plaintiffs bring the claims described in Count X and XI on behalf of themselves and all others similarly situated pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.

54. Plaintiffs bring the claims described in Count X and XI on behalf of a proposed **"McBride Elmwood Negligence Subclass"** defined as, "All current and former ACHA public housing residents who lived in McBride or Elmwood in the year prior to the filing of Plaintiffs' original complaint."

55. **Numerosity.** The classes are so numerous that joinder of all of their members is impracticable. Upon information and belief, each subclass is comprised of hundreds of individuals. The putative class members are unlikely to press their claims on an individual basis because as residents of public housing, all putative class members have limited incomes, and the value of their individual claims is modest.

56. **Commonality and Predominance.** Common questions of fact and law predominate over questions affecting individual class members. Questions of law and fact common to the classes include:

   a) whether ACHA discriminated against residents in McBride and Elmwood based on their race by refusing to maintain those developments and by prohibiting them from living in Connell Smith and certain scattered site developments.

   b) whether ACHA discriminated against residents in McBride and Elmwood based on their familial status by refusing to allow families with children to live in Connell Smith and Shoemaker and certain scattered site developments.

   c) whether ACHA breached its public housing lease and acted negligently by not maintaining the units in a decent, safe, and sanitary condition and by not complying with all HUD regulations affecting health and safety.

57. **Typicality and Adequacy.** Plaintiffs' claims are typical of the classes as a whole. All of the Plaintiffs' claims arise from the same unlawful practices: discriminating against

residents in McBride and Elmwood based on their race and familial status and allowing the residential units to deteriorate. Plaintiffs do not present claims that are unique to themselves and instead bring claims typical to the class members. Proposed class representatives and class counsel will fairly and adequately protect the interests of the classes as a whole. Plaintiffs do not have any interests antagonistic to those of other class members. By filing this action, Plaintiffs have displayed an interest in vindicating their rights, as well as the claims of others who are similarly situated. Plaintiffs are represented by experienced counsel.

58. **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of this controversy because it will:

   a. avoid the heavy burden of multiple, duplicative suits;

   b. avoid the virtually impossible task of getting all class members to intervene as party-plaintiffs in this action;

   c. allow the Court, upon adjudication of defendant's liability, to determine the claims of all class members; and

   d. allow the Court to enter appropriate final monetary relief with respect to the classes as a whole.

59. **Injunctive and Declaratory Relief**. ACHA has acted or refused to act on grounds that apply generally to the Rule 23(b)(2) class as a whole, so that final injunctive or declaratory relief is appropriate respecting the class as a whole. For years, ACHA has discriminated against the residents of McBride and Elmwood based on their race and familial status, in violation of the Fair Housing Act, Title VI, and the Illinois Civil Rights Act.

## INJURY TO THE PLAINTIFFS

60. Defendants' actions threaten Plaintiffs with imminent and irreparable injury, including deteriorating housing, crime, discrimination, and segregation.

61. Defendants' actions have the purpose and effect of limiting housing opportunities for racial minorities and families with children.

62. Defendants' actions disproportionately deny housing opportunities in Alexander County to racial minorities and families with children.

63. According to the 2014 American Community Survey, Alexander County contains an estimated total of 7,821 people, of whom 59.7% are non-Hispanic white and 35.9% are African-American. African-Americans in Alexander County are disproportionately poor. 53.8% of African-American households in Alexander County earn incomes below the federal poverty line, compared to 19.7% of non-Hispanic white households. In 2014, 85.7% of African-American households in Alexander County were income eligible for federally assisted housing, compared to 59.8% of non-Hispanic white households in Alexander County. While African-Americans comprise 35.9% of Alexander County's population, approximately 45.2% of Alexander County households who are eligible for federally assisted housing are African-American.

64. According to the 2014 American Community Survey, Alexander County contains 2,826 households, of which 25.7% include children under the age of 18. Families with children under the age of 18 in Alexander County are disproportionately poor. 60.3% of such households earn incomes below the federal poverty line, compared to 30.3% of households overall. In 2014, 80.3% of Alexander County households with children under the age of 18 were income eligible for federally assisted housing, compared with 46.1% of Alexander County households with no children under the age of 18 in the household.

65. African-Americans also disproportionately reside in ACHA's public housing. Almost 80% of ACHA's units contain a head of household who is African-American.

66. Through their actions described above, Defendants have acted negligently, intentionally, maliciously, and with willful, malicious, wanton, and reckless disregard for federal and state fair housing and non-discrimination laws.

67. Through their actions of allowing units at McBride and Elmwood to fall into a state of disrepair as further described above, Defendants have acted negligently, intentionally, maliciously, and with willful, malicious, wanton, and reckless disregard for the rights of Plaintiffs and the McBride Elmwood Negligence Subclass.

68. Defendants' actions have caused and will continue to create a severe hardship for plaintiffs.

69. Plaintiffs have no adequate remedy at law.

## LEGAL CLAIMS

### COUNT I – FAIR HOUSING ACT CLAIM
### DISPARATE TREATMENT BASED ON RACE
### (On Behalf of the McBride Elmwood Race Discrimination Subclass Against All Defendants)

70. Plaintiffs re-allege paragraphs 1 to 69 of this Complaint and incorporate them herein.

71. Defendants, through their actions and the actions of their agents, intentionally discriminated against African-Americans living at McBride and Elmwood based on their race, in violation of 42 U.S.C. § 3604.

### COUNT II – FAIR HOUSING ACT CLAIM
### DISPARATE IMPACT BASED ON RACE
### (On Behalf of the McBride Elmwood Race Discrimination Subclass Against All Defendants)

72. Plaintiffs re-allege paragraphs 1 to 69 of this Complaint and incorporate them herein.

73. Defendants' actions as described above have had an adverse disparate impact upon Plaintiffs as African-Americans, without any legitimate justification and therefore, constitute a violation of the Fair Housing Act, 42 U.S.C. §§ 3604.

### COUNT III – FAIR HOUSING ACT CLAIM
### PERPETUATION OF RACIAL SEGREGATION
### (On Behalf of the McBride Elmwood Race Discrimination Subclass
### Against All Defendants)

74. Plaintiffs re-allege paragraphs 1 to 69 of this Complaint and incorporate them herein.

75. Defendants' actions as described above perpetrate segregation on the basis of race in violation of the Fair Housing Act § 3604.

### COUNT IV – FAIR HOUSING ACT CLAIM
### FAILURE TO AFFIRMATIVELY FURTHER FAIR HOUSING
### (On behalf of the McBride Elmwood Race Discrimination and Familial Status
### Discrimination Subclasses against ACHA)

76. Plaintiffs re-allege paragraphs 1 to 69 of this Complaint and incorporate them herein.

77. ACHA is a "person" within the meaning of 42 U.S.C. § 1983, and its actions described herein were taken under color of state law.

78. By engaging in the actions and omissions described above, and failing to take meaningful action to remedy these egregious civil rights violations, ACHA has violated its duty to affirmatively further fair housing, in violation of 42 U.S.C. § 3608(e)(5). By breaching its duty to affirmatively further fair housing, ACHA deprived Plaintiffs of rights secured to them by federal law, in violation of 42 U.S.C. § 1983.

### COUNT V – TITLE VI OF THE CIVIL RIGHTS ACT OF 1964
### (On behalf of the McBride Elmwood Race Discrimination
### Subclass against ACHA)

79. Plaintiffs re-allege paragraphs 1 to 69 of this Complaint and incorporate them herein.

80. ACHA, through its actions and the actions of its agents, are liable for the violation of Plaintiffs' rights under Title VI of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000d *et seq.*, under which, "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of or be subjected to discrimination under any program or activity receiving Federal financial assistance."

### COUNT VI – ILLINOIS CIVIL RIGHTS ACT OF 2003 CLAIM
### (On behalf of the McBride Elmwood Race Discrimination
### Subclass against ACHA)

81. Plaintiffs re-allege paragraphs 1 to 69 of this Complaint and incorporate them herein.

82. ACHA, through its actions and the actions of its agents, are liable for the violation of Plaintiffs' rights under the Illinois Civil Rights Act of 2003, 740 Ill. Comp. Stat. Ann. 23/5, under which, "[n]o unit of State, county, or local government in Illinois shall: (1) exclude a person from participation in, deny a person the benefits of, or subject a person to discrimination under any program or activity on the grounds of that person's race, color, national origin, or gender; or (2) utilize criteria or methods of administration that have the effect of subjecting individuals to discrimination because of their race, color, national origin, or gender."

### COUNT VII – FAIR HOUSING ACT CLAIM
### DISPARATE TREATMENT BASED ON FAMILIAL STATUS
### (On Behalf of the McBride Elmwood Familial Status Discrimination Subclass Against All Defendants)

83. Plaintiffs re-allege paragraphs 1 to 69 of this Complaint and incorporate them herein.

84. Defendants, through their actions and the actions of their agents, intentionally discriminated against families with minor children, in violation of 42 U.S.C. § 3604.

### COUNT VIII – FAIR HOUSING ACT CLAIM
### DISPARATE IMPACT BASED ON FAMILIAL STATUS
### (On Behalf of the McBride Elmwood Familial Status Discrimination Subclass Against All Defendants)

85. Plaintiffs re-allege paragraphs 1 to 69 of this Complaint and incorporate them herein.

86. Defendants' actions as described above will have an adverse disparate impact upon plaintiffs as families with minor children, without any legitimate justification and therefore, constitute a violation of the Fair Housing Act, 42 U.S.C. §§ 3604.

**COUNT IX – BREACH OF ACHA'S RESIDENTIAL LEASE
STATE LAW BREACH OF CONTRACT CLAIM
(On Behalf of the McBride Elmwood Residential Lease
Subclass Against ACHA)**

87. Plaintiffs re-allege paragraphs 1 to 69 of this Complaint and incorporate them herein.

88. Defendant ACHA breached its duties under its respective leases with the McBride Elmwood Residential Lease Subclass in that ACHA failed to maintain their dwelling unit and the project in decent, safe, and sanitary condition as required by ACHA's standard residential lease.

89. Defendant ACHA breached its duties under its respective leases with the McBride Elmwood Residential Lease Subclass in that ACHA failed to comply with the requirements of applicable building codes, housing codes, and HUD regulations materially affecting health and safety.

90. ACHA's breach of the residential leases have caused damage to the McBride Elmwood Residential Lease Subclass,

**COUNT X – NEGLIGENCE
(On Behalf of the McBride Elmwood Residential Lease
Subclass Against ACHA)**

91. Plaintiffs re-allege paragraphs 1 to 69 of this Complaint and incorporate them herein.

92. Under its residential leases with the members of the McBride Elmwood Negligence Subclass, ACHA undertook a duty to maintain the dwelling units in a decent, safe, and sanitary condition and to comply with all HUD regulations materially affecting health and safety.

93. Defendant ACHA breached its duty to the McBride Elmwood Negligence Subclass in that ACHA allowed the dwelling units to become infested with mice, roaches, bedbugs, and mold and allowed the units' plumbing systems to fall into disrepair.

94. Defendant ACHA knew or should have known that their acts and omissions as detailed herein would cause injury to the McBride Elmwood Negligence Subclass.

95. The foregoing acts and omissions of Defendant ACHA proximately caused the injury to the McBride Elmwood Negligence Subclass subclass.

## COUNT XI – WILLFUL AND WANTON CONDUCT
### (On Behalf of the McBride Elmwood Residential Lease Subclass Against ACHA)

96. Plaintiffs re-allege paragraphs 1 to 69 of this Complaint and incorporate them herein.

97. Under its residential leases with the members of the McBride Elmwood Residential Lease Subclass, ACHA undertook a duty of care to maintain the dwelling units in a decent, safe, and sanitary condition, to comply with all HUD regulations materially affecting health and safety, and to refrain from willful and wanton misconduct.

98. Defendant ACHA breached its duty of care and duty to refrain from willful and wanton misconduct to the McBride Elmwood Negligence Subclass in that ACHA allowed the dwelling units to become infested with mice, roaches, bedbugs, and mold and allowed the units' plumbing systems to fall into disrepair.

99. In breaching its duty to the McBride Elmwood Residential Lease Subclass, ACHA actually and deliberatly intended to cause harm to the McBride Elmwood Negligence Subclass or demonstrated a conscious disregard for the Class Members' welfare.

**RELIEF REQUESTED**

WHEREFORE, Plaintiffs respectfully request that this Court:

a. Declare that the acts and omissions of the Defendants, as set forth above, violate the Fair Housing Act of 1968, as amended, 42 U.S.C. § 3601 *et seq.*, Title VI of the Civil Rights Act, 42 U.S.C.A. § 2000d *et seq.,* and the Illinois Civil Rights Act of 2003, 740 Ill. Comp. Stat. Ann. 23/5. ;

b. Find that the Defendants' conduct was tortious and the proximate cause of damages to the plaintiff classes;

c. Enter a preliminary and permanent injunction, without bond or upon a nominal bond, enjoining ACHA from discriminating against the members of the McBride and Elmwood subclass based on their race or familial status and directing ACHA to take all affirmative steps necessary to remedy the effects of the illegal, discriminatory conduct described herein and to prevent similar occurrences in the future;

d. Award monetary relief in the amount of compensatory damages, abatement of rent, punitive damages against the individual defendants, and prejudgment interest in an amount to be proven at trial;

e. Enter an order requiring Defendants to pay Plaintiffs' reasonable costs and attorneys' fees for the prosecution of this action, pursuant to 42 U.S.C. § 3613(c)(2), 740 Ill. Comp. Stat. Ann. 23/5(c), and 42 U.S.C. § 1988;

f. Certify the McBride Elmwood Familial Status Discrimination Subclass, the McBride Elmwood Race Discrimination Subclass, and the McBride Elmwood Residential Lease Subclass, and the McBride Elmwood Negligence Subclass defined above and appoint the undersigned attorneys as Class Counsel; and

g. Grant Plaintiffs such further relief as this Court deems just and proper.

## Jury Demand

Plaintiffs demand trial by jury on all issues as to which a jury trial is available.

DATED: July 20, 2016

By: /s/ Christopher J. Wilmes
Attorneys for Plaintiffs,

Christopher J. Wilmes
HUGHES, SOCOL, PIERS, RESNICK, & DYM, LTD.
70 W. Madison Street, Suite 4000
Chicago, Illinois 60602
312-580-0100

Katherine E. Walz
Kevin Herrera
SARGENT SHRIVER NATIONAL CENTER ON POVERTY LAW
50 East Washington Street, Suite 500
Chicago, Illinois 60602
312-263-3830

*Attorneys for Plaintiffs*